# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

THE COUNTY COMMISSION OF
FAYETTE COUNTY, WEST VIRGINIA,

        Plaintiff,

Ex Rel.:  LARRY E. HARRAH II, ESQ.,
Fayette County Prosecuting Attorney

        - Real Party in Interest,

        v.

SEMINOLE WEST VIRGINIA MINING
COMPLEX, LLC, (A Delaware Limited
Liability Company Authorized to do Business
in West Virginia - Currently a Debtor in a
Pending Chapter 11 Bankruptcy Proceeding)

THOMAS M. CLARK, an Individual,

KENNETH R. McCOY, an Individual,
7608 Trail Blazer Trail
Wake Forest, NC    27587

JASON R. McCOY, an Individual,
9113 Linslade Way
Wake Forest, NC    27587

MIKE ISABELL, an Individual,
1345 Elk Ridge Road
Powellton, WV  251.61

GREAT MIDWEST INSURANCE CO.

IRONSHORE SPECIALTY INS. CO.

DOE INSURERS 1 through 10

        Defendants

Case No.    2:19-cv-00113

**AMENDED COMPLAINT**

**AMENDED COMPLAINT FOR: (1) JUDICIAL ABATEMENT OF A
CONTINUING PUBLIC NUISANCE PURSUANT TO THE COMMON LAW OF
WEST VIRGINIA; (2) JUDICIAL ABATEMENT OF A CONTINUING PUBLIC
NUISANCE PURSUANT TO SECTION XXII OF FAYETTE COUNTY
ORDINANCE 2018-01; (3) DAMAGES FOR INJURY TO, LOSS OF, AND
DESTRUCTION OF NATURAL RESOURCES WITHIN FAYETTE COUNTY**

**PURSUANT TO SECTION VI(a)(19)(E) OF FAYETTE COUNTY ORDINANCE 2018-01; and (4) UNJUST ENRICHMENT**

## I.    INTRODUCTON:

Pursuant to Federal Rule of Civil Procedure 15(a)(1) Plaintiff's Relator, Larry E. Harrah II, Esq, the duly-elected Fayette County Prosecuting Attorney, hereby files this Amended Complaint herein as a matter of course. For several months prior to and for two (2) days following the filing of its original complaint herein, the Office of the Fayette County Prosecuting Attorney, acting pursuant to the Fayette County Public Nuisance Civil Investigation Ordinance, Fayette County Ordinance 2017-002, has been formally seeking information from Defendant Seminole Mining regarding the status of its mining operations in Fayette County and the impact of releases of pollutants and contaminants from those on their facility and surface waters and watersheds within Fayette County. Until a meeting held two (2) days after Plaintiff filed its complaint in this civil action before the Fayette County Circuit Court, Defendant Seminole Mining, notwithstanding a Temporary Restraining Order from the Fayette County Circuit Court mandating the provision of the requested information to Plaintiff, had completely failed or refused to produce the requested information. Because of that failure or refusal to produce the formally requested information, Plaintiff's investigations into environmental impacts of Defendant's mining operations in Fayette County continued. On February 15, 2019, a meeting was held between Plaintiff's attorneys and an authorized Special Agent of the Fayette County Code Enforcement Agency with environmental engineering expertise and attorneys and geo-technical representatives of Defendant Seminole Mining regarding the status of Defendant's mining operations and their  potential impact on the adequate protection of the public health, safety, welfare and the environment within Fayette County during which the representatives of the Defendant provided a significant amount of the requested information.  This Amended

Complaint, filed as a "matter of course" pursuant to Federal Rule of Civil Procedure 15(a)(1), reflects Plaintiffs receipt and consideration of the information resulting from its own investigations and that recently provided by Defendant Seminole Mining.

Prior to its removal by Defendant Seminole West Virginia Mining Complex, LLC of February 14, 2019, Plaintiff's original civil action was commenced by the filing of the original complaint herein before the Circuit Court of Fayette County, West Virginia. Plaintiff's original complaint was filed and served on Defendant Seminole Mining on February13, 2019.

Plaintiff's Relator, Larry E. Harrah II, Esq, the duly-elected Fayette County Prosecuting Attorney brings this civil action in the name of, and on behalf of, Plaintiff, THE COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINA ("**Governmental Plaintiff**") pursuant to the express authority conferred upon him by:  **(1)** W. Va. Code § 7-4-1 to attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which Fayette County is interested; and **(2)** Sections VI(j)(4), VIII(b)(2) and XXII of the Fayette County Ordinance 2018-001, entitled "Fayette County Comprehensive  Public Nuisance Abatement Ordinance" (**"Public Nuisance Abatement Ordinance"**).  The Governmental Plaintiff, by and through its undersigned counsel, makes the following allegations upon knowledge as to itself and upon information and belief as to all other matters:

## II.    NATURE OF THIS CONTINUING PUBLIC NUISANCE ABATEMENT CASE:

### a.  Overview of the Continuing Public Nuisances Alleged Herein:

1.    The Upper Armstrong Creek Watershed (hereinafter: "**the Watershed**") in Fayette County, which is a part of greater Armstrong Creek (a tributary of the Kanawha River) is above the confluence of Armstrong Creek and Powellton Branch, at the community of Powellton, West Virginia, and includes the Right Fork of Armstrong Creek and Left Fork of Armstrong Creek.

2.      The graphic depiction of **the Watershed** set forth in this paragraph of this Amended

Complaint fairly and accurately represent the geographical area and facilities and natural resources

located within it that it presents and portrays:



3.      The operations of Defendant Seminole West Virginia Mining Complex, LLC

("Seminole Mining") at their facility in Western Fayette County, West Virginia, including an

underground coal mine and associated surface facilities, have contributed at all times during

Defendant Seminole Mining's operation of that facility and are continuing to cause and contribute

to the high levels of contamination in the groundwater and to connected surface waters within **the**

**Watershed** by past and continuing "Releases," as that term is defined in Section III(kk)of the

Public Nuisance Abatement Ordinance, into the "Environment", as that term is defined in Section

III(n) of the Public Nuisance Abatement Ordinance, from their Facility of: **(i)** "Hazardous Wastes"

as that term is defined in Section III(u) of the Public Nuisance Abatement Ordinance, specifically total manganese and total aluminum; and **(ii)** "Wastes" as that term is defined in Section III(ww) of the Public Nuisance Abatement Ordinance, specifically total iron, total manganese and total aluminum; and **(iii)** "Pollutants and Contaminants" as that term is defined in Section III(ee) of the Public Nuisance Abatement Ordinance, specifically iron, manganese and aluminum.

4.      Defendant Seminole Mining's past and present releases of such Hazardous Wastes, Wastes, and Pollutants and Contaminants into the groundwater **with the Watershed** has caused or contributed to, and is continuing to cause and contribute to, a condition in the groundwater and connected surface waters within **the Watershed** that:  **(i)** impairs the quality and beneficial uses of natural resources held in trust for the use and benefit of present and future generations of the Public; and **(ii)** has been declared in Sections V(a)(6), (8) and (10) of the Fayette County Comprehensive Public Nuisance Abatement Ordinance duly adopted by the Fayette County Commission, exercising authority expressly granted to it by W. Va. Code §§ 7-1-3 and 7-1-3kk, each to be a Public Nuisance in Fayette County, West Virginia.

5.      Adverse impacts on groundwater and surface water resources within **the Watershed** caused or contributed to by the past and on-going release(s) into the groundwater environment of high levels of Hazardous Substances, Hazardous Wastes, Wastes, and Pollutants and Contaminants from Defendant Seminole Mining's operations have resulted, and are continuing to result, in the loss of beneficial uses of these surface water and groundwater resources, specifically including the ability to use those water resources as a public drinking water supply without incurring excessive treatment costs; a condition constituting a Public Nuisance under the common law of West Virginia and declared to be Public Nuisance by Section V of the **Public Nuisance Abatement Ordinance**.

6.      Defendant Seminole Mining's operations of its Facility in **the Watershed** have

contributed and are contributing Hazardous Substances, Hazardous Wastes, Wastes, and Pollutants and Contaminants to the groundwater within **the Watershed** in Fayette County.   This contamination has comingled within **the Watershed** with like Hazardous Substances, Hazardous Wastes, Wastes, and Pollutants and Contaminants from mining facilities owned or operated by other mining companies to form a single, indivisible imminent and substantial endangerment to and harm to the public health, safety welfare and the environment within Fayette County for which there is no reasonable and reliable basis for apportioning among those contributing Persons the harm presented or imminently threatened by the Public Nuisance, and which contamination has caused and is continuing to cause degradation of groundwater, surface waters, and sediment to the point that they can no longer meet their designated uses under the federal Clean Water Act.

7.      Watersheds within the permit boundaries of Defendant Seminole Mining facility in Fayette County appear on the WV § 303(d) list of "impaired waters."   Plaintiff asserts that these past and on-going Releases into the Environment alleged in Paragraph 3, *supra,* from Defendant Seminole Mining Facility have caused or contributed to the "impaired waters' status of surface waters within the **Watershed**.

8.      Defendant Seminole Mining, as the "owner and operator" of a "Facility" that has caused and contributed to, and that is continuing to cause and contribute to, conditions of Public Nuisance within **the Watershed**, as declared by the Public Nuisance Abatement Ordinance, is a "Person" liable pursuant to Section VI of the Public Nuisance Abatement Ordinance for the remedial obligations imposed by the Public Nuisance Abatement Ordinance, specifically those required by Section IX(b) the Public Nuisance Abatement Ordinance.

**b.  The Nature and Origin of the Governmental Plaintiff's Continuing Public Nuisance Abatement Authority:**

6.      Article II, Section 2 of the West Virginia Constitution provides that all of the

powers of government are resident in the Citizens of the State of West Virginia "and can be rightfully exercised only in accordance with their will and appointment."

7.      Pursuant to Article III, Section 3 of the Constitution of the State of West Virginia, the government of the State of West Virginia is instituted by the Citizens of West Virginia and vested with all of their powers as Sovereigns "for the "common benefit, protection and security of the people, nation or community:" Most prominent among those powers inherent in the Sovereignty of those citizens and vested by them in their State government are the "Police Powers" of the State of West Virginia, by which is meant the inherent power to protect the Public Health, Safety, Welfare and the Environment for the benefit of present and future generations of the Public:

> The police power of the state is the power of government inherent in every sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. *Farley v. Graney*, 146 W.Va. 22, pt. 5 syl., 119 S.E.2d 833; *Nulter v. State Road Commission*, pt. 2 syl., 119 W.Va. 312, 193 S.E. 549 (194 S.E. 270); *City of Huntington v. State Water Commission*, 137 W.Va. 786, pt. 3 syl., 73 S.E.2d 833. The police power is difficult to define because it is so extensive, elastic and constantly evolving to meet the new and increasing demands for its exercise for the benefit of society. It embraces the power of the state to preserve and promote the public welfare and it is concerned with whatever affects the peace, security, morals, health and general welfare of the community. **'The exercise of the police power cannot be circumscribed within narrow limits nor can it be confined to precedents resting on conditions of the past. As civilization becomes more complex and advancements are made the police power of necessity must develop and expand to meet such conditions.'** *Farley v. Graney*, 146 W.Va. 22, 36, 119 S.E.2d 833, 842.

*State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, (1965), [Bolding emphasis added].

8.      The principles of law that form the **remedial arm** of the Sovereign's "Police Powers," which is to say the set of expansive legal authorities that govern the inherent power of the Sovereign State to **ABATE** anything that impermissibly and unreasonably endangers the Public Health, Safety, Welfare or the Environment, or impermissibly and unreasonably impairs the beneficial uses of any natural resource held in Public Trust for the benefit of present and future

generations of the Public, is referred to as the "Public Nuisance Doctrine," and those acts or conditions that present or may present such impermissible and unreasonable endangerments or impairments to the Public or any substantial number of persons are referred to by the common law and statutes of West Virginia as each being a "Public Nuisance". *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245, 488 S.E.2d 901, 925 (1997) ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated. Thus, until such harm is abated, the public nuisance is continuing, and the statute of limitations does not accrue.").

9.      Because of its origin and continuing primacy among the inherent "Police Powers" of the Sovereign State, it long has been and remains a fundamental principle of the common law of Public Nuisance in West Virginia that the power to bring and prosecute a Public Nuisance Abatement action lies only with public prosecutors authorized to bring the claims of the Sovereign State, and such other public officials as are authorized by law. *Id.* at p. 241. ("Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public.")

10.     Pursuant to **W. Va. Code § 7-1-3**, Plaintiff, the County Commission of Fayette County, West Virginia is vested "under rules prescribed by law" with superintendence of the internal "police" (*i.e.,* public protection) and fiscal affairs of Fayette County, a political subdivision of the State of West Virginia.

11.     Pursuant to W. Va. Code § 7-1-3kk, the County Commission of Fayette County, is vested with the following "Police Powers" of the State of West Virginia:

> **In addition to all other powers and duties now conferred by law upon county commissions, commissions are hereby authorized to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety <u>and</u> to abate or cause to be abated anything which the commission**

> **determines to be a public nuisance.**  The ordinances may provide for a misdemeanor penalty for its violation.  The ordinances may further be applicable to the county in its entirety or to any portion of the county as considered appropriate by the county commission.

*Id.* [Bolding and underscoring emphasis added].

12.     In exercise of the express authority to enact ordinances conveyed to it by W. Va. Code §§ 7-1-3 and 7-1-3kk, on August 17, 2018, Plaintiff, the County Commission of Fayette County, West Virginia duly enacted Fayette County Ordinance 2018-001 entitled "The Fayette County Comprehensive Public Nuisance Abatement Ordinance" (hereinafter: **Public Nuisance Abatement Ordinance**"), an official, sealed copy of which is attached hereto as **Exhibit I** and incorporated herein.  Notably, as it pertains to the present, continuing Public Nuisance conditions and endangerments to the Environment alleged herein, the Public Nuisance Abatement Ordinance, particularly Section IX(b) thereof, seeks to implement investigatory and remedial measures which, to the greatest degree possible, are not inconsistent with the procedures and requirements of the National Oil and Hazardous Substance Contingency Plan, 40 C.F.R. Part 300, the national standard for the proper and appropriate investigation and abatement of environmental harms and risks to human health arising from such harms.

13.     The **Governmental Plaintiff** brings this civil action:  **(a)** in exercise of the "Police Powers" conveyed to by the laws of the State of West Virginia timely to secure judicial abatement of the Public Nuisance condition within Fayette County alleged herein; and **(b)** to secure judicial enforcement of, and timely and competent compliance by the Defendants with the terms and condition of, the Public Nuisance Abatement Ordinance and Orders issued and served upon Defendants in compliance therewith.

**c.   Nature of the "Direct Action" Against Insurers and Indemnitors of Certain Responsible Parties Authorized by Section VI(j) of the Public Nuisance Abatement Ordinance:**

14.     Consistent with the "Direct Action" provisions of several modern federal and state remedial environmental and public health protection statutes, Section VI(j) of the Public Nuisance Abatement Ordinance authorizes the direct assertion of claims against an indemnitor or insurer of a Responsible Party with remedial liability imposed by Ordinance where, as is the case with Defendant Seminole Mining herein, that Responsible Party is in bankruptcy reorganization, or arrangement pursuant to the federal bankruptcy code.

15.     Section VI(j) (*i.e., t*he "Direct Action" provisions) of the Public Nuisance Abatement Ordinance, like the similar provisions of several modern federal and state remedial environmental and public health protection statutes, allow the liability of a Responsible or Potentially Responsible Party under the Ordinance and the liability of an Insurer or Indemnitor of such a Responsible or Potentially Responsible Party under the indemnification contract or policy of insurance to be determined in a single civil action, known as a "Direct Action," thus providing a more expeditious method for resolving the remedial claims of the Public than would be the case with separate, seriatim civil actions that would be required in the absence of a "Direct Action" provision.

16.     Pursuant to Section VI(j) of the Public Nuisance Abatement Ordinance, the right of the insurer/indemnitor to raise both the insured's defenses to liability under the Ordinance and the defenses of the insurer/indemnitor to liability under the contract or policy of insurance are preserved in any such "Direct Action."

### III.  <u>JURISDICTION AND VENUE:</u>

17.     On February 14, 2019 Defendant Seminole Mining removed this civil action from the Fayette County Circuit Court where it was Case No. 19-c-14 (hereinafter:  the **"State Court Action"**) to this Court by filing herein a Notice of Removal.  In that Notice of Removal, Defendant

Seminole Mining asserted that the **State Court Action** is one over which the United States District Court for the Southern District of West Virginia has original jurisdiction under 28 U.S.C. § 1332 and one which can be removed to that United States District Court pursuant to 28 U.S.C. § 1441(b) because the Plaintiff and Defendant Seminole Mining are citizens of different states and the amount in controversy exceed $75,000.

18.     In further support of its assertion that the State Court Action is one in which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, Seminole Mining asserted in its Notice of Removal that the citizenship of Defendant Michael Isabel should be disregarded by this Court because Plaintiff improperly joined Mike Isabell as a defendant.

19.     Although Seminole Mining asserted in its Notice of Removal that none of the members of Defendant Seminole West Virginia Mining Complex, LLC, are citizens of West Virginia, it did represent or assert in its Notice of Removal the identity of those members, the actual citizenship of each such member, or the citizenship of each member of any limited liability company that is or may be a member of Defendant Seminole West Virginia Mining Complex, LLC.

20.     Consistent with its obligations and those of its legal counsel pursuant to Federal Rule of Civil Procedure 11, the **Governmental Plaintiff** and its legal counsel represent to this Court that they do not believe that any basis exists, under existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, for any good faith assertion:  **(i)** that this Court has original jurisdiction over any claim asserted in the State Court Action; or **(ii)** that federal subject matter jurisdiction exists over this civil action.

21.     The **Governmental Plaintiff** filed herein its Motion for Remand of this civil action to the Fayette County Circuit Court on February 19, 2019.  The requested Remand of this civil action remains *sub judice* as of the filing date of this Amended Complaint.

## IV.  **THE PARTIES**:

**22.**     Pursuant to W. Va. Code 7-1-1, the **Governmental Plaintiff** herein, The County Commission of Fayette County, West Virginia, is a public corporation that may sue and be sued and is a political subdivision of the State of West Virginia.

**23.**     Defendant Seminole West Virginia Mining Complex, LLC is a Delaware Limited Liability Company that has since February 10, 2016 been authorized to do business in West Virginia.   Its principle place of business, members, and the name and address of its statutory agent for service of process as currently reported by it to the West Virginia Secretary of State are set forth on the webpage maintained by the West Virginia Secretary of State; a true and correct copy of which is attached as **Exhibit II**.

**24.**     On October 14, 2018, Defendant Seminole West Virginia Mining Complex, LLC, filed a Voluntary Petition for Chapter 11 Bankruptcy with U.S. Bankruptcy Court for the Northern District of Alabama, *In RE: Seminole West Virginia Mining Complex, LLC, Debtor,* Case No. 18-04184-TOM11.   This Chapter 11 Bankruptcy Proceeding, which is being jointly administered with the Bankruptcy proceeding of several related companies under the lead Bankruptcy proceeding, *In RE:  Mission Coal Company, LLC, Debtor*, Case No. 18-04177-TOM1, remains pending as of the date of filing of this Amended Complaint.

**25.**     Defendant Thomas M. Clark, a resident of the Virginia, is an individual who, upon information and belief, on February 11, 2016 and for a period currently unknown to Plaintiff before and after that date, was, and represented himself as being, and held himself out to be, the Managing Member of Seminole Coal Resources, LLC, which, in turn, represented and held itself out to be the sole member and parent of Defendant Seminole West Virginia Mining Complex, LLC, which representation by Seminole Coal Resources, LLC are wholly contrary to the representations made

by Seminole Coal Resources, LLC in its filing with the West Virginia Secretary of State on February 10, 2016.

26. On information and belief, Defendant Thomas M. Clark was on February 11, 2016, and for a period currently unknown to Plaintiff before and after that date, the Executive Officer and Managing Member of Defendant Seminole Mining with the ultimate **authority** within that limited liability company to recommend or take on behalf of that limited liability company the actions necessary to secure compliance with the requirements of applicable federal, state, local environmental and public health protection laws and regulation, specifically including those relating to Discharges and Releases into the Environment of Hazardous Waste and Pollutants and Contaminants from Defendant Seminole Mining's Facility in Fayette County alleged herein. Also on information and belief, Defendant Thomas M. Clark is the , the Executive Officer and Managing Member of Defendant Seminole Mining charged with **responsibility** to oversee, both directly and through the retention and supervision of subordinate employees of Defendant Seminole Mining, the environmental and public health protection control procedures at the operations of Defendant Seminole Mining's Facility in Fayette County so as to assure their compliance with applicable laws and regulations.

27. Defendant Thomas M. Clark was on January 11, 2016, and for a period currently unknown to Plaintiff before and after that date, an "Owner or Operator" of Defendant Seminole Mining's Facility in Fayette County within the meaning of that term set forth in Section III(cc) of the Fayette County Public Nuisance Abatement Ordinance.

28. Defendant Kenneth R. McCoy, a resident of North Carolina, is an individual reported on February 10, 2016 to the West Virginia Secretary of State by Defendant Seminole Mining as being of one (1) of the two (2) member of Defendant Seminole West Virginia Mining Complex, LLC. As of the date of filing of this complaint, Defendant Seminole Mining continues

to report to the West Virginia Secretary of State that Kenneth R. McCoy is one (1) of the two (2) member of Defendant Seminole West Virginia Mining Complex, LLC.

29.     Upon information and belief, on February 11, 2016 and for a period currently unknown to Plaintiff before and after that date Defendant Kenneth R. McCoy was, and represented himself as being, and held himself out to be, the Chief Executive Officer and Managing Member of Seminole Coal Resources, LLC, which contrary to the representations made to the West Virginia Secretary of State by that Limited Liability Company on February 10, 2016, represented and held itself out to be the sole member and parent of Defendant Seminole West Virginia Mining Complex, LLC.

30.     On information and belief, Defendant Kenneth R. McCoy was on February 11, 2016, and for a period currently unknown to Plaintiff before and after that date, the Chief Executive Officer and Managing Member of Defendant Seminole Mining with the ultimate **authority** within that limited liability company to recommend or take on behalf of that limited liability company the actions necessary to secure compliance with the requirements of applicable federal, state, local environmental and public health protection laws and regulation, specifically including those relating to Discharges and Releases into the Environment of Hazardous Waste and Pollutants and Contaminants from Defendant Seminole Mining's Facility in Fayette County alleged herein.  Also on information and belief, Defendant Kenneth R. McCoy was on February 11, 2016, and for a period currently unknown to Plaintiff before and after that date, the Chief Executive Officer and Managing Member of Defendant Seminole Mining charged by that limited liability company with **responsibility** to oversee on a day to day basis, both directly and through the retention and supervision of subordinate employees of Defendant Seminole Mining, the environmental and public health protection control procedures at the operations of Defendant Seminole Mining's Facility in Fayette County so as to assure their compliance with applicable laws and regulations.

**31.**     Defendant Kenneth R. McCoy was on January 11, 2016, and for a period currently unknown to Plaintiff before and after that date, an "Owner or Operator" of Defendant Seminole Mining's Facility in Fayette County within the meaning of that term set forth in Section III(cc) of the Fayette County Public Nuisance Abatement Ordinance.

**32.**     Defendant Jason R. McCoy, a resident of North Carolina, is an individual reported on February 10, 2016 to the West Virginia Secretary of State by Defendant Seminole Mining as being of one (1) of the two (2) member of Defendant Seminole West Virginia Mining Complex, LLC.  As of the date of filing of this complaint, Defendant Seminole Mining continues to report to the West Virginia Secretary of State that Jason R. McCoy is one (1) of the two (2) member of Defendant Seminole West Virginia Mining Complex, LLC, which has and continues to report itself to the West Virginia Secretary of State to be a member-managed Delaware limited liability company.

**33.**     Defendant Mike Isabell is the Environmental Manager for Mission Coal Company and its wholly owned subsidiary, Defendant Seminole West Virginia Mining Complex, LLC, and on information and belief, is a resident of West Virginia.  On information and belief, Defendant Mike Isabell is the employee and agent of Mission Coal Company and Defendant Seminole Mining with the first-line **authority** of his employers to recommend or take on behalf of his employers the actions necessary to secure compliance with the requirements of applicable federal, state, local environmental and public health protection laws and regulation, specifically including those relating to Discharges and Releases into the Environment of Hazardous Waste and Pollutants and Contaminants from Defendant Seminole Mining's Facility in Fayette County alleged herein.  Also on information and belief, Defendant Mike Isabell is the employee and agent of Mission Coal Company and Defendant Seminole Mining charged with **responsibility** to oversee environmental and public health protection control procedures at Defendant Seminole Mining's Facility in

Fayette County and make or recommend necessary or proper changes in those procedures.

34. On May 30, 2017 Defendant Mike Isabell signed, subject to the penalties for perjury, a certification to the West Virginia Department of Environmental Protection in connection with a permit application by Defendant Seminole Mining to that Agency of the State West Virginia that stated: **"I, the undersigned, having examined this facility and this groundwater protection plan (GPP), will follow the GPP currently on file with the environmental inspector and commit all resources needed to comply with this plan, the Groundwater Protection Act, and the applicable regulations."** A true and correct copy of that certification is attached hereto as **Exhibit III** and incorporated herein.

35. On October 11, 2018 Defendant Mike Isabell signed, subject to the penalties for perjury, a Certification to the West Virginia Department of Environmental Protection on behalf of Defendant Seminole Mining that states he is **"a Principal Officer (President, Vice President) of the Applicant (*i.e*, Defendant Seminole Mining) with authorization to execute"** the Application to the West Virginia Department of Environmental Protection (hereinafter: "WV DEP") for Coal Field Development New Permit on behalf of Seminole West Virginia Mining Complex, LLC and submitted it to WV DEP. A true and correct copy of that Certification is attached hereto as **Exhibit IV** and incorporated herein.

36. Defendant Mike Isabell is a person who caused or contributed to the Public Nuisance conditions alleged herein.

37. Defendant Mike Isabell is an "Owner or Operator" of Defendant Seminole Mining's Facility in Fayette County within the meaning of that term set forth in Section III(cc) of the Fayette County Public Nuisance Abatement Ordinance.

38. Defendant Great Midwest Insurance Company ("Great Midwest") is a Texas corporation with its principal place of business in Houston, TX. Great Midwest an insurer or

indemnitor of Defendant Seminole Mining and, on information and belief, of Defendants Kenneth R. McCoy and Jason R. McCoy, under one or more commercial general liability and commercial umbrella liability insurance policies, including policies numbered GL0016383001 and CX0016385901, which policies were in effect during the events of environmental harm and degradation described herein.

39.     Defendant Ironshore Specialty Insurance Company ("Ironshore") is an Arizona Corporation with its principal place of business in New York, NY. Ironshore is an insurer or indemnitor of Defendant Seminole Mining and, on information and belief, of Defendants Kenneth R. McCoy and Jason R. McCoy, under one or more pollution liability policies, including a policy numbered 003334100, which policies were in effect during the events of environmental harm and degradation described herein.

40.     Defendants Doe Insurers 1 through 10 are each an insurer or indemnitor of Seminole Mining and, on information and belief, of Defendants Kenneth R. McCoy and Jason R. McCoy, under one or more liability insurance policies, which policies were in effect during the events of environmental harm and degradation described herein.

41.     Defendants Great Midwest, Ironshore, and Doe Insurers 1 through 10 are referred to herein as the "Insurer Defendants."

## V.     ALLEGATIONS COMMON TO ALL COUNTS:

42.     Defendant Seminole Mining operates an underground mine and associated surface facilities in the Eagle seam of coal under West Virginia Mining permits U301906 and WVI022164.

43.     Defendant Seminole Mining's facility is located in western Fayette County near the Kanawha County line in the Valley District, southwest of Powellton at approximately 38°04'06" north latitude and 81 °20'26" west longitude. The deep mine is located between Armstrong Creek

(west) and Johnson Fork of Loop Creek (east).

44.     The receiving streams of permitted surface discharges from Defendant Seminole Mining Facility in **the Watershed** are Unnamed Tributaries of/and Armstrong Creek, Unnamed Tributaries of/and Sycamore Branch, Unnamed Tributaries of, and Laurel Branch of Paint Creek and Paint Creek, all of which are tributaries of the Kanawha River.

45.     Barring other influences, the flow of this contaminated water would be expected to follow natural gradients.  As the above-drainage mines in the watershed are in the Eagle seams of coal, the natural gradients for contaminated groundwater would be into the surface water and valley floor groundwater systems and stream beds.   At the hillside/valley floor interface, contaminants from individual mines will commingle, and the Hazardous Wastes, Pollutants and Contaminants, and Waste Released in whole or in part from Defendant Seminole's Facility in Fayette County have commingled, with like contaminants Released into the Environment from upgradient mines, creating a single, commingled and indivisible plume of contaminants in the valley floor sediments, groundwater and surface water system.   This commingled plume of contaminant presents a single, indivisible harm and unacceptable endangerment to the Public Health, Safety, Welfare and the Environment within Fayette County, which harm and endangerment is not reasonably susceptible to apportionment.

46.     Defendant Seminole Mining utilizes the underground mine method to extract coal from the Eagle seam at its Facility in Fayette County.

47.     Defendant Seminole Mining's own Article 3 monitoring data and the Upper Kanawha River Total Maximum Daily Load ("TMDL") establish that Defendant Seminole Mining's operations in Fayette County have resulted in adverse impacts to the quality and beneficial uses of the groundwater and surface water within Fayette County, specifically including significant increases of iron concentrations well above that which naturally occurs.

48.    Contamination resulting from Defendant Seminole Mining's operations of its Facility in **the Watershed** has comingled within the permitted boundaries of Defendant's Facility and has caused, and continues to cause, degradation of surface waters and sediment **the Watershed** to the point that they can no longer meet their designated uses under the federal Clean Water Act.

49.    Watersheds within the Defendant Seminole Mining's permit boundaries appear on the WV 303(d) list of "impaired waters" and are subject to TMDLs.

50.    Facility monitoring data related to mining and discharge permits at Defendant Seminole Mining's Facility in **the Watershed**, specifically the Facility's Article 3 monitoring data for the 3rd Quarter 2018, shows the continuing adverse impacts to groundwater and elevated levels of iron and aluminum in groundwater.

51.    The Fayette County Prosecuting Attorney applied to this Court for a Temporary Restraining Order in Civil Action No. 18-c-207 seeking judicial enforcement of Civil Information Demand # 002 issued to Seminole Mining by the Fayette County Prosecuting Attorney pursuant to his authority under Fayette County Ordinance 2017-002, entitled the Fayette County Public Nuisance Civil Investigation Ordinance.  On January 7, 2019, a hearing at which both parties were represented by counsel was held before the Fayette County Circuit Court (Blake, Jr., J.) on that application for a Temporary Restraining Order.  At the conclusion of that hearing, the Court, by oral Order, required Defendant Seminole Mining to respond in full to the Civil Information Demand on or before January 31, 2019.  The Fayette County Circuit Court's oral Order granting the Application of the Fayette County Prosecuting Attorney for a Temporary Restraining Order was journalized by a written Order of the Court filed in that case on January 23, 2018.

52.    On January 23, Defendant Seminole Mining applied to the Fayette County Circuit Court for a Stay pending appeal of its Temporary Restraining Order.  By written Order entered in

Civil Action No. 18-c-207, the Fayette County Circuit Court (Blake, Jr., J.) denied Defendant's request for a stay pending appeal.

53. By written Order entered in its Case No. 10-0101, the West Virginia Supreme Court of Appeals denied Defendant Seminole Mining Request for Stay Pending Appeal of the Temporary Restraining Order entered against in by the Fayette County Circuit Court.

**COUNT ONE:**
**JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE**
**PURSUANT TO THE COMMON LAW OF WEST VIRGINIA**
***(all Defendants, including the Insurer Defendants)***

54. The **Governmental Plaintiff** incorporate and reallege the foregoing paragraphs as if fully set forth herein.

55. Under West Virginia law, a Public Nuisance is "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Hark v. Mountain Fork Lumber Co.,* 127 W.Va. 586, 595-96 (1945).

56. The Restatement (Second) of Torts § 82 IB, which has been cited as articulative of the common law of West Virginia by the West Virginia Supreme Court of Appeals in *Hedricks v. Stalnaker*, 181 W. Va. 31 (1989) defines a public nuisance as "an unreasonable interference with a right common to the general public."

57. Where a condition "is shown by facts and circumstances to constitute a nuisance affecting public health 'no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law.'" *Board of Com'rs of Ohio County v. Elm Grove Mining Co.*, 122 W.Va. 442, 9 S.E.2d 813, 817 (W.Va. 1940) (quoting 1 Wood on Nuisances, 3d Ed.,§19); *Respublica v. Caldwell*, 1 U.S. 150 (1785).

58. Under the common law of West Virginia as declared by W. Va. Code § 2-1-1, Public Nuisance Abatement is an exercise of the sovereign's inherent power to secure on behalf

of the Public abatement of a harm or of an unacceptable endangerment (*i.e.,* a risk of harm) to the public health, safety, welfare, and the environment.

59.    The West Virginia Supreme Court of Appeals has described Public Nuisance generally under the common law of West Virginia as "the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public[.] (footnotes omitted)". *State, ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 (1997) at fn. 28.

60.    The appropriate use, enjoyment and existence of Natural Resources within West Virginia and Fayette County uncontaminated by than acts or omission other than those expressly permitted or consented to by the Sovereign pursuant to the General Laws of West Virginia are rights common to present and future generations of the Public.

61.    In articulating the common law of West Virginia, the West Virginia Supreme Court of Appeals has stated:  "A public nuisance action usually seeks to have some harm which affects the public health and safety abated.  Thus, until such harm is abated, the public nuisance is continuing and the statute of limitations does not accrue." *State, ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 (1997.  Accordingly, the provision of adequate protection of the public health, safety, welfare and of the environment through appropriate abatement of the Public Nuisance condition is the fundamental purpose of a Public Nuisance action under the common law of West Virginia.

62.    The West Virginia Supreme Court of Appeals has held that under the common law of West Virginia:  "Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public. *Hark v. Mountain Fork Lumber Co., 127 W. Va. 586, (W.Va. 1945).*

63.    Pursuant to W.Va. Code § 7-1-3kk, the General Law of West Virginia has vested

in the **Governmental Plaintiff** herein, The County Commission of Fayette County, the authority "to abate or cause to be abated anything which the commission determines to be a public nuisance." As such, the Governmental Plaintiff has the authority to pursue an action for Public Nuisance under the common law of West Virginia to secure timely and adequate judicial abatement of unacceptable harms and hazards to the public health, safety, welfare or the environment presented by this condition of Public Nuisance.

64.    The aforementioned acts and omissions of the Defendants caused or contributed to the continuing Public Nuisance conditions within the **Watershed**, which were since the time of their initial creation and which remain to the present an imminent and substantial endangerment to human health and the environment, which have been and remain offensive to the senses, such that an ordinary person would reasonably be annoyed or disturbed, and which constituted an unreasonable interference with the free use and enjoyment of such groundwaters and connected surface waters within **the Watershed,** all of which are "Waters of the State" as that term is defined by the General Laws of West Virginia and in Section III(vv) of the Public Nuisance Abatement Ordinance held in trust for the benefit of present and future generations of the Public.

65.    Under the common law of West Virginia as articulated by the West Virginia Supreme Court of Appeals in *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 488 S.E.2d 901 (1997), the object of the Public Nuisance action is to abate the harms or unacceptable endangerments to the public health, safety, and environment, not just the act(s) triggering any such harm or endangerment.  An action for Public Nuisance stands until the harm or unacceptable endangerments to the public health, safety, welfare and the environment are appropriately abated.

66.    The seriousness of the harm and of the unacceptable endangerments to the public health, safety, welfare and the environment caused by such noxious and offensive Public Nuisance

conditions within **the Watershed** alleged herein substantially outweigh any social utility of the conduct of Defendants.  Seminole's mining operations have caused and contributed to the on-going noxious or offensive conditions by their actions and failures to act that have cause or contributed to, and are continuing to cause or contribute to the on-going impairment of natural resources, including groundwater, surface waters and sediments, within **the Watershed** that are held in trust for the benefit of present and future generations of the Public.

67.    The elected representatives of the People and residents of Fayette County did not consent to or expressly permit or authorize the conduct of the Defendant Seminole Mining alleged herein to have caused or contributed to, or to be causing and contributing to, the continuing conditions of Public Nuisance within **the Watershed** alleged herein.

68.    The aforementioned conduct of the Defendant Seminole Mining in the operation of its Facility in Fayette County is and was a substantial factor in causing and contributing to the condition of a continuing Public Nuisance in **the Watershed** alleged herein.

69.    Defendants Seminole Mining, Thomas M. Clark, Kenneth McCoy, Jason McCoy and Mike Isabell are each a person jointly and severally liable under the common law of West Virginia for abatement of the Public Nuisance condition in **the Watershed** alleged herein because each is:  **(i)** a Person who, by their acts and omissions as an Operator of Defendant Seminole Mining's Facility in **the Watershed** caused, created, contributed to, or maintained the continuing condition of Public Nuisance alleged herein; and **(ii)** a "Person" who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the Public Nuisance.

**COUNT TWO:**
**JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE**
**WITHIN FAYETTE COUNTY PURSUANT TO SECTION XXII OF THE**

## FAYETTE COUNTY COMPREHENSIVE PUBLIC NUISANCE ABATEMENT ORDINANCE
### (*all Defendants, including the Insurer Defendants*)

70.     The **Governmental Plaintiff** incorporates in this Count each of the foregoing paragraphs, set forth above, as if fully set forth herein.

71.     Defendants Seminole Mining, Thomas M. Clark, Kenneth R. McCoy, Jason R. McCoy, and Mike Isabell are each a "Person" within the meaning of Section III(dd) of the Public Nuisance Abatement Ordinance.

72.     Defendant Seminole Mining's Eagle Deep Mine facility in Fayette County is a "facility or site" within the meaning of that term as defined in Section III(o) of Public Nuisance Abatement Ordinance.

73.     Defendant Seminole Mining in an "owner or operator" of its Eagle Deep Mine facility in Fayette County within the meaning of that term as defined in Section III(o) of the Public Nuisance Abatement Ordinance.

74.     During some or all of the period that the operations of Defendant Seminole caused or contributed to the condition of Public Nuisance alleged herein, Defendants Thomas M. Clark, Kenneth R. McCoy, Jason R. McCoy, and Mike Isabell were each an "operator" of its Eagle Deep Mine facility in Fayette County within the meaning of that term as defined in Section III(o) of the Public Nuisance Abatement Ordinance.

75.     Defendants Thomas M. Clark, Kenneth R. McCoy, Jason R. McCoy, and Mike Isabell are each a Person who caused or contributed to the continuing Public Nuisance conditions alleged herein by their actions and failures to act as "operator" of Defendant Seminole Mining's Facility in **the Watershed.**

76.     The manganese compounds that have been released, that are being released, and that threatened imminently to be released into the groundwater and connected surface waters

within **the Watershed** are a "Hazardous Waste" as that term is defined in Section III(u)(1)(2) of the Public Nuisance Abatement Ordinance.

77.     The total iron, total manganese, and total aluminum that have been released, that are being released, and that threatened imminently to be released into the groundwater and connected surface waters within **the Watershed** are each a "Waste" as that term is defined in Section III(ww) of the Public Nuisance Abatement Ordinance.

78.     The total iron, total manganese, and total aluminum that have been released, that are being released, and that are threatened imminently to be released into the groundwater within Fayette County are each a "Pollutant or Contaminant" as that term is defined in Section III(ee) of the Public Nuisance Abatement Ordinance.

79.     The past and on-going release(s) or discharge(s) of iron, manganese and aluminum into the groundwater within Fayette County from Defendant Seminole Mining's "facility" in Fayette County constitutes "disposal" of a waste as that term is defined in Section III(l) of the Public Nuisance Abatement Ordinance.

80.     There has been and is currently present in "Waters of State" as that term in Section III(vv) of the Public Nuisance Abatement Ordinance within **the Watershed**, to wit, the groundwater at and downgradient of Defendant Seminole Mining's facility in Fayette County, iron at a level in excess of 300 µg/L of total iron.

81.     There is present in "Waters of State" as that term in Section III(vv) of the Public Nuisance Abatement Ordinance within Fayette County, to wit, the groundwater within the Watershed, iron at a level in excess of 300 µg/L of total iron.

82.     There is present in "Waters of State" as that term in Section III(vv) of the Public Nuisance Abatement Ordinance within Fayette County, to wit, the groundwater within the

Watershed at and downgradient of Defendant Seminole Mining's facility in Fayette County, manganese at a level in excess of 50 µg/L of total manganese.

83.     There is present in "Waters of State" as that term in Section III(vv) of the Public Nuisance Abatement Ordinance within Fayette County, to wit, the groundwater within the Watershed at and downgradient of Defendant Seminole Mining's facility in Fayette County, manganese at a level in excess of 50 µg/L of total manganese.

84.     The presence of levels of iron in the groundwater at and downgradient of Defendant Seminole Mining's facility at levels in excess of 300 µg/L of total iron in groundwater is a continuing **Public Nuisance** in Fayette County declared by the County Commission of Fayette County in Section V(a)(10), subparagraph (6) of the duly enacted Public Nuisance Abatement Ordinance because that condition was caused or contributed to by the "Release" or "Disposal" of a "Waste" at, under or emanating from Defendant Seminole Mining's "facility" in Fayette County.

85.     The presence of levels of manganese in the groundwater within **the Watershed** at and downgradient of Defendant Seminole Mining's facility at levels in excess of 50 µg/L of total manganese in groundwater is a **Public Nuisance** in Fayette County declared by the County Commission of Fayette County in Section V(a)(10), subparagraph (6) of the Public Nuisance Abatement Ordinance because that condition was caused or contributed to by the "Release" or "Disposal" of either or both a "Hazardous Waste" and a "Waste" at, under or emanating from Defendant Seminole Mining's Facility in Fayette County.

86.     Defendants Seminole Mining, Thomas M. Clark, Kenneth R. McCoy, Jason R. McCoy and Mike Isabell are each a "Person Liable" pursuant to Section VI(a)(4) of the Public Nuisance Abatement Ordinance for all of the remedial (*i.e.,* site investigation, remediation, and post-remediation monitoring) liabilities, specifically including those required pursuant to Section IX(b) of the Public Nuisance Abatement Ordinance, and, where appropriate, damages set forth in

Section VI(a) of the Public Nuisance Abatement Ordinance because each was: **(i)** the "Owner or Operator" of its "facility" in Fayette County at, on, in, from, or with which the declared **Public Nuisance** conditions described above were created, contributed to, or maintained at any time during the creation or existence of those Public Nuisance conditions; and **(ii)** a "Person" who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the Public Nuisance.

87.     Fayette County has incurred and will continue to incur Abatement Action Costs, within the meaning of the Public Nuisance Abatement Ordinance, in connection with and with respect to the Public Nuisance addressed above.

## COUNT THREE:
## DAMAGES FOR INJURY TO, LOSS OF, AND DESTRUCTION OF NATURAL RESOURCES WITHIN FAYETTE COUNTY PURSUANT TO SECTION VI(a)(19)(E) OF FAYETTE COUNTY ORDINANCE 2018-01
### (*all Defendants, including the Insurer Defendants*)

88.     The **Governmental Plaintiff** incorporates in this Count each of the foregoing paragraphs, set forth above, as if fully set forth herein.

89.     At present and while appropriate remedial investigation and appropriate actions properly to abate the Public Nuisance conditions in the Watershed alleged herein are ongoing, soil, subsurface soils, surface waters, sediments and groundwater within **the Watershed** remain contaminated the Hazardous Wastes, Pollutants and Contaminants, and Waste Released in whole or in part from Defendant Seminole's Facility in Fayette County.

90.     The Hazardous Wastes, Pollutants and Contaminants, and Waste Released in whole or in part from Defendant Seminole's Facility in Fayette County remaining in the soils within the Watershed will remain an ongoing source of contamination to the groundwater and surface waters within the Watershed.

91.    "Natural Resources" within the meaning of that term as defined by Section III(aa)of the Fayette County Comprehensive Public Nuisance Abatement Ordinance in the Watershed, specifically including groundwater and surface waters, have been injured, destroyed and lost, are being injured, destroyed and lost, and will continue to be injured, destroyed and lost as a result of the Discharges of Hazardous Wastes, Pollutants and Contaminants, and Waste Released in whole or in part from Defendant Seminole's Facility in Fayette County until those Discharges and the endangerments to the Public Health, Safety, Welfare and the Environment presented by them have been appropriately abated.

92.    Fayette County has incurred, and will likely continue to incur, costs, and the Public will continue to incur damages, including lost value, loss of water, and reasonable assessment costs, for the Natural Resource within the Watershed, specifically including those within the permitted boundaries of Defendant Seminole Mining's Facility in Fayette County, that has been, or may be, injured, as a result of the Discharges of Hazardous Wastes, Pollutants and Contaminants, and Waste Released in whole or in part from Defendant Seminole's Facility in Fayette County.

93.    Pursuant to Sections VI(a)(1-9)(E) and (h) of the Public Nuisance Abatement Ordinance each Defendant is jointly and severally liable to Fayette County, acting as Trustee on behalf of the Public, for damages for injury to, destruction of, and loss of Natural Resources, including the reasonable costs of assessing such injury, destruction, and loss resulting from the Public Nuisance conditions within Fayette County alleged herein.

**COUNT FOUR:**
**UNJUST ENRICHMENT**
*(all Defendants, including the Insurer Defendants)*

94.     The **Governmental Plaintiff** incorporates in this Count each of the foregoing paragraphs, set forth above, as if fully set forth herein.

95.     Defendants have failed to fully perform or fund the necessary and proper abatement and remediation actions in **the Watershed** appropriate to respond to the Public Nuisance conditions alleged herein.

96.     The **Governmental Plaintiff's** expenditure of public funds to investigate and respond to the Public Nuisance conditions **the Watershed** alleged herein, which would otherwise be Defendants' obligation to fully fund or perform, has unjustly enriched Defendants.

## VI.  *PRAYER FOR RELIEF*:

WHEREFORE, the **Governmental Plaintiff** respectfully requests that the appropriate Court of competent jurisdiction award the following relief:

A.     As to all Defendants, jointly and severally, pursuant to the West Virginia common law of public nuisance and the Public Nuisance Abatement Ordinance, mandatory injunctive relief in the nature of a Judicial Public Nuisance Abatement Order that is compliant with the requirements of Section IX of the Public Nuisance Abatement Ordinance, binding and compelling each Defendant, jointly and severally, timely and competently to undertake all actions necessary to abate appropriately the continuing harms and imminent and substantial endangerments to the public health, safety, welfare and the environment caused, or that are imminently threated to be caused, by the continuing and on-going nuisance conditions in **the Watershed** alleged herein, including the groundwater and connected surface waters and sediments at and downgradient of Defendant Seminole Mining's facility in Fayette County that are a Public Nuisance pursuant to the common law of West Virginia, and that have been duly declared to be a Public Nuisance within Fayette County, which Abatement Order requires (without limitation):  **(1)** a full Remedial

Investigation of all harms or endangerments which have resulted or may have resulted from such contamination, pursuant to 40 C.F.R. § 300.430; and **(2)** such further actions deemed necessary to select and implement, under the oversight and direction of the Fayette County Code Enforcement Agency, a permanent and effective remedy for such harms; and **(3)** such further relief as may thereafter be determined necessary and appropriate, all in full compliance and accordance with the requirements of the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R., Part 300;

**B.**     As to all Defendants, jointly and severally, pursuant to Section XXII(a)(3) of the Public Nuisance Abatement Ordinance, the recovery of all **Abatement Action Costs**, as that term is defined by Section III(b) of the Public Nuisance Abatement Ordinance, incurred by Fayette County in connection with the Public Nuisance referenced above.

**C.**     As to all Defendants, jointly and severally, pursuant to Section XXII(c) of the Public Nuisance Abatement Ordinance, recovery of the attorney fees and litigation costs, including the costs of one non-testifying technical or scientific expert assisting the Fayette County Prosecuting Attorney, incurred or to be incurred by Fayette County in this matter;

**D.**     As to all Defendants, jointly and severally, pursuant to Sections VI(g) and XXII(a)(6) of the Public Nuisance Abatement Ordinance, entry of a declaratory judgment on liability of each for future **Abatement Action Costs** to be incurred by the County with respect to the **Public Nuisance(s)** at issue that will be binding on any subsequent action or actions to recover further response costs or damages, until all **Abatement Actions** with respect to the continuing **Public Nuisance** at issue have been completed and all related and properly recoverable **Abatement Actions Costs** incurred by Fayette County have been recovered, or their recovery expressly waived by the County;

**E.**     As to each Defendant jointly and severally, pursuant to Sections VI(a)(1-9)(E) and

(h) of the Public Nuisance Abatement Ordinance, damages to the **Governmental Plaintiff**, acting as Trustee for the Public, for injury to, destruction of, or loss of Natural Resources alleged herein, including the reasonable costs of assessing such injury, destruction, or loss resulting from a Public Nuisance within Fayette County; **provided, however**, that, as required by Section VI(h)(1) of the Public Nuisance Abatement Ordinance, all such damages recovered be retained in a segregated public account of Fayette County, without further appropriation, for use by the Fayette County Commission only to restore, replace, or acquire the equivalent of such Natural Resources.

      **F.**    As to all Defendants, an award of prejudgment interest, pursuant to applicable federal or state law;

      **G.**    Such other and further relief as the appropriate Court of competent jurisdiction deems necessary and appropriate.

      The **Governmental Plaintiff** respectfully requests that the appropriate Court of competent jurisdiction retain continuing jurisdiction of this action to the extent necessary and for as long as necessary to enforce and interpret, and to secure and review the Defendants' compliance with, such Court's Orders entered herein.

      Respectfully submitted,

      **LARRY E. HARRAH II**
      **FAYETTE CO. PROSECUTING ATTORNEY**

By:  _/s/ Michael O. Callaghan_
      Michael O. Callaghan (WV Bar No. 5509)
      Chief Assistant Fayette County Prosecuting Attorney
      OFFICE OF THE FAYETTE COUNTY
         PROSECUTING ATTORNEY
      ENVIRONMENTAL & PUBLIC HEALTH
         PROTECTION UNIT
      NEELY & CALLAGHAN

159 Summers Street
Charleston, WV  25301
Telephone:  (304) 343-6500
Facsimile:  (304) 343-6528
E-Mail:  mcallaghan@neelycallaghan.com

## CERTIFICATE OF SERVICES

I, Michael O. Callaghan, Chief Assistant Prosecuting Attorney, do hereby certify that I served on Defendants a true copy of this **Amended Complaint for: (1) Judicial Abatement of a Continuing Public Nuisance Pursuant to the Common Law of West Virginia; (2) Judicial Abatement of a Continuing Public Nuisance Pursuant to Section XXII of Fayette County Ordinance 2018-01; (3) Damage for Injury to Loss of; and Destruction of Natural Resources Within Fayette County**, by filing it with the court using CM/ECF which will send notification of such filing to all counsel of record.

/s/ Michael O. Callaghan
Michael O. Callaghan