```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON

THE COUNTY COMMISSION OF
FAYETTE COUNTY, WEST VIRGINIA,

         Plaintiff,

v.                                 Civil Action no. 2:19-cv-00113

SEMINOLE WEST VIRGINIA MINING
COMPLEX, LLC, KENNETH MCCOY,
JASON MCCOY, MIKE ISABELL,
GREAT MIDWEST INSURANCE CO.,
IRONSHORE SPECIALTY INS. CO.,
DOE INSURERS,

         Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is a motion to remand to the Circuit Court of Fayette County, West Virginia, filed February 19, 2019, by plaintiff the County Commission of Fayette County, West Virginia ("the Commission"). The defendant Seminole West Virginia Mining Complex, LLC, ("Seminole") filed a response on February 26, 2019, to which the plaintiff replied on March 4, 2019.

### I.  Background

This case was first presented to the court through its companion case, <u>Seminole West Virginia Mining Complex, LLC v. John Brenemen, et al.</u>, 2:19-cv-00082. The court herein refers to the instant case as "the enforcement action" and the case

brought by Seminole as "the declaratory action." In the declaratory action, Seminole sought, as an initial matter, a temporary restraining order ("TRO") to enjoin the Commission from enforcing a local ordinance enacted by the Commission and an order by the Commission which, <u>inter</u> <u>alia</u>, mandated Seminole to conduct costly monitoring, testing, analyzing, and reporting as to its contribution to the increase of iron concentrations in a nearby water supply well. The Commission's order states that noncompliance therewith may result in costly civil penalties; the only available avenue to challenge the order under the Commission's ordinance is if the Fayette County Prosecuting Attorney brings an enforcement action against the noncomplying party. Seminole has not complied with the order.

Seminole sought a TRO to enjoin the Commission from enforcing the ordinance and order, arguing that compliance therewith would be unreasonably costly, especially in light of Seminole's pending bankruptcy proceeding in the Northern District of Alabama, and that the Commission's ordinance is unlawful as preempted.

On February 13, 2019, the day before the TRO hearing, the Commission filed the instant enforcement action in the Circuit Court of Fayette County to enforce Seminole's compliance with the local ordinance and order. The action is brought

against Seminole, its two members (Kenneth R. McCoy and Jason R. McCoy), its environmental manager (Mike Isabell), as well as the insurers of Seminole. In light of the state enforcement action, the Commission opposed the TRO as violating the federal Anti-Injunction Act, 28 U.S.C. § 2283: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Subsequently, on February 14, 2019, the day of the TRO hearing, Seminole removed the enforcement action to this court on diversity grounds, thereby apparently resolving the Anti-Injunction Act issue so long as the enforcement action remains in this court. At the hearing, the Commission informed the court of its intent to file a motion to remand. The court ordered expedited briefing on the remand issue and deferred consideration of the TRO until such issue was decided. At the hearing, the Commission agreed not to impose the daily civil penalties under its ordinance for forty-five days while the parties briefed and the court considered the issue relating to remand. The motion to remand is ripe for adjudication.

## II. Applicable Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing removal jurisdiction rests on the removing party. Mulcahey v. Colum. Organic Chem. Co., 29 F. 3d 148, 151 (4th Cir. 1994). "Any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction." Marshall v. Manville Sales, Corp., 6 F.3d 229, 232 (4th Cir. 1993).

The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996)).

III. Discussion

The Commission challenges the court's jurisdiction on the ground that the parties lack complete diversity. Specifically, it contends that it and defendant Mike Isabell are both West Virginia citizens.

Seminole, however, argues that the citizenship of Mike Isabell should be disregarded because he is a fraudulently joined defendant.[1]

"'Fraudulent joinder' is a term of art, [and] it does not reflect on the integrity of plaintiff or counsel[; rather, it] is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists." AIDS Counseling & Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1003

---

[1] Seminole also argues that removal was proper under 28 U.S.C. § 1441(b)(2) because Mike Isabell was not "joined and served" at the time of removal. This argument is misplaced. Section 1441(b)(2), often referred to as the "forum defendant rule" states: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." (emphasis added). A defendant not being "joined and served" prior to removal may serve as an exception to the forum defendant rule in certain circumstances, compare e.g., Phillips Constr., LLC v. Daniels Law Firm, PLLC, 93 F. Supp. 3d 544, 548 (S.D.W. Va. 2015) to Bloom v. Library Corp., 112 F. Supp. 3d 498, 506 (N.D.W. Va. 2015), but it does not create an exception to the complete diversity requirement.

(4th Cir. 1990) (quoting Lewis v. Time Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979)).

The party alleging fraudulent joinder bears a heavy burden:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F. 3d 229, 232 (4th Cir. 1993)).

Under the "no possibility" standard, "a plaintiff's claim against a non-diverse defendant 'need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) (quoting Marshall, 6 F.3d at 233). The party seeking remand "must show only a 'glimmer of hope' of succeeding against the non-diverse defendants." Id. citing Mayes, 198 F.3d at 466. In this analysis, all legal and factual issues must be resolved in the plaintiff's favor. Id. ("we must resolve all legal and factual issues in [the plaintiff's] favor.") (citing Mayes, 198 F. 3d at 465). This standard "is even more favorable to the plaintiff than the standard for

6

ruling on a motion to dismiss[.]"  Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).

Additionally, when determining whether a joinder is fraudulent, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'"  AIDS Counseling, 903 F.2d at 1004 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)).[2]

To support its argument that Mike Isabell is fraudulently joined, Seminole first presents evidence that the Commission has no intention of pursuing any claim against him. Specifically, Seminole provides a copy of an e-mail correspondence from the Commission's counsel which states: "Was a little worried Mike Isabel[l] might not be very happy with me

---

[2] However, the Court cannot consider post-removal filings "to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." Griggs v. State Farm Lloyds, 181 F.3d 694, 700 (5th Cir.1999). A plaintiff cannot "'re-plead the complaint [after removal] in an attempt to divest this court of jurisdiction by hindsight.'" McCoy v. Norfolk Southern Ry. Co., 858 F.Supp.2d 639, 642 n. 1 (S.D.W.Va.2012) (quoting Justice v. Branch Banking & Trust Co., 2009 WL 853993 at *7 (S.D.W.Va. Mar. 24, 2009)). The Court must determine removal jurisdiction "on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it." Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 265 (5th Cir. 1995).  The court, accordingly, only considers the original state court complaint and does not consider the pleadings in the amended complaint filed March 7, 2019.

for suing him. Certainly willing to explain it to him and he is in no peril." Seminole's Opposition, ECF # 8, Ex. 1. Seminole additionally provides a signed declaration from Mr. Isabell wherein he declares that at a February 15, 2019 meeting with counsel for the Commission, counsel stated: "you have my word as prosecutor that no one will come after you personally." ECF # 8, Ex. 2.

In its reply, the Commission claims that these statements have been mischaracterized. It notes that the purpose of the statements was to ensure Mr. Isabell that his personal assets were not in peril:

> [Counsel for the Commission] made it clear to Mr. Isabell that the County Commission's principal interest and focus in this litigation is <u>not on reaching his personal assets, which are in no peril</u>. Rather, to the extent that Mr. Isabell acts in good faith and in a manner consistent with his obligations to his liability insurers, to his employer, and any other indemnitor(s), taking all steps to pre-serve all rights against such entities, the Commission would forego execution against his personal assets, looking instead to available sources of indemnification.

Reply, ECF # 11 at 6 (emphasis in original).

Notably, "'the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined.'" <u>Goldberg v. CPC International, Inc.</u>, 495 F. Supp. 233, 239 (N.D.Ca.1980) (quoting <u>Mecom v. Fitzsimmons Drilling Co.</u>, 284 U.S. 183, 189

8

(1931)). The two statements provided by Seminole do not, alone, establish that the Commission has no "good faith cause of action" against Mr. Isabell. Rather, they merely show that the Commission has no intention of recovering any of Mr. Isabell's personal assets, but does preserve its right to reach, through Isabell, those who would indemnify him.

Second, Seminole argues that Mr. Isabell's joinder was fraudulent because the Commission has no hope of establishing a cause of action against him.

Seminole starts this argument by restating its position in the TRO briefing that the Commission has no cognizable claim against anyone because its order and ordinance are unlawful and the Commission is proceeding <u>ultra</u> <u>vires</u>. Inasmuch as the West Virginia code has vested in the Commission the authority "to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance[,]" W. Va. Code § 7-1-3kk, the court cannot conclude that the Commission lacks even a "glimmer of hope" that its ordinance is lawful.

Next, Seminole argues that even if the court takes the ordinance at face value, the Commission cannot establish any claim thereunder against Mr. Isabell. The ordinance imposes liability upon, <u>inter</u> <u>alia</u>:

- Any Person that, at any time during the creation or existence of a Public Nuisance, was an Owner <u>or</u> <u>Operator</u> of . . . any real or personal property, site, or Facility at, on, in, from, or with which a Public Nuisance has been, is being, or imminently threatens to be, created, contributed to, or maintained within Fayette County, and, who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the Public Nuisance;

- Any Person (including any past or present generator, past or present transporter, or past or <u>present</u> <u>Owner</u> <u>or</u> <u>Operator</u> of a Facility) that has contributed or is contributing to the past or present Disposal in Fayette County of any Waste, Hazardous Waste, Hazardous Substance, or Pollutant or Contaminant which presents, or which may present, a Public Nuisance within Fayette County, and;

Motion, ECF # 5 at 3 (quoting Public Nuisance Abatement Ordinance Section VI) (emphases in original). The parties dispute whether Mr. Isabell, as Seminole's environmental manager, constitutes an "operator." There is little guidance in the ordinance as to the definition of "operator." Rather, the term "Owner or Operator" is therein defined as: "in the case of a Facility, any Person owning or operating such Facility. . . ." Compl. Ex. 1, Fayette County, West Virginia Ordinance No. 2018-001, at 14.

Seminole contends that the ordinance should be construed as mirroring the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675. Specifically, Seminole contends that "Operator liability under CERCLA must be alleged with facts sufficient to establish control[;]" and that "[the complaint] fails to identify any fact establishing that Isabell had any control over Seminole's operations." ECF # 8 at 7 (emphasis in original). Under CERCLA, the Supreme Court has stated:

> an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

United States v. Bestfoods, 524 U.S. 51, 66–67 (1998). Indeed, in Mr. Isabell's declaration provided by Seminole, he states that he "do[es] not have the authority to direct any of Seminole's coal mining and reclamation operations[,]" and that he is "not able to authorize the expenditure of any money for any of Seminole's coal mining and reclamation operations or environmental compliance activities." ECF # 8 Ex. 2.

The Commission, on the other hand, contends that "CERCLA and the Ordinance at issue are entirely different laws, enacted by different bodies, and serving entirely different purposes . . . [.]" ECF # 11 at 8. Nonetheless, the Commission presents two pieces of evidence contradicting Mr. Isabell's declaration: first, in an application for a Coal Field Development Permit, Mr. Isabell signed a certification stating, <u>inter alia</u>, that he is "a principal officer (President, Vice President) of the Applicant [Seminole Mining] with authorization to execute this form[,]" ECF # 5 Ex. 2 at 27; second, in another application, Mr. Isabell signed a certification as an "Owner, Partner, or Principal Officer[,]" certifying that he "ha[s] examined this facility and this groundwater protection plan (GPP), [and] will follow the GPP currently on file with the environmental inspector and commit all resources needed to comply with this plan, the Groundwater Protection Act, and the applicable regulations." ECF # 11 Ex. 1. The Commission therefore contends that Mr. Isabell does in fact have control over Seminole's operations and can authorize the expenditure of Seminole's money.

These discrepancies create a question of fact which must be resolved in the Commission's favor. Assuming Mr. Isabell is an operator, and assuming the ordinance is valid, Mr.

Isabell may be subject to liability.  Accordingly, the court cannot say that the Commission does not have at least a "glimmer of hope" of prevailing on a claim against Mr. Isabell.  He is thus a valid defendant and the parties lack complete diversity.[3]

IV. Conclusion

In light of the forgoing, the court finds that the defendants have failed to demonstrate that the court has subject matter jurisdiction over this case.  Accordingly, it is ORDERED that the motion to remand be, and it hereby is, granted.

The court further ORDERS that this civil action be, and it hereby is, remanded to the Circuit Court of Fayette County, West Virginia.

The Clerk is directed to strike this matter from the docket of the court.  The Clerk is further requested to transmit this order to all counsel of record and to any unrepresented parties.

DATED: March 29, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge

---

[3] Having determined that the parties lack complete diversity, the court does not address the plaintiff's argument that Seminole failed to properly assert its own citizenship.